UNITED STATES of America, Plaintiff,

v.

WESTERN ELECTRIC COMPANY, INC., and American Telephone and Telegraph Company, Defendants.

UNITED STATES of America, Plaintiff,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants.

Civ. A. No. 82–0192.
Misc. No. 82–0025 (PI).

United States District Court, District of Columbia.

Dec. 7, 1983.

James P. Denvir, Michael F. Altschul, Luin P. Fitch, J. Philip Sauntry, Jr., Richard Levine, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for plaintiff.

Howard J. Trienens, Jim G. Kilpatric, John D. Zeglis, Francine Berry, New York City, for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

The Court has before it two requests for exceptions to the provision in the consent decree which prohibits local operating companies from providing inter-LATA services. The first is a motion by the Chesapeake and Potomac Telephone Companies (C & P) for permission to provide additional inter-LATA metropolitan foreign exchange (Metro FX) service. The C & P motion is opposed in varying degrees by AT & T, the Department of Justice, and MCI.[1] The second is a motion by the Western Reserve Telephone Company for permission to provide foreign central office service (FCO), a service similar to Metro FX. The Depart-

---

1. Two other entities, Unicom, Ltd. and Loudon County, have requested permission to intervene, but those motions will be denied. Unicom seeks to participate here in order to obtain an injunction against C & P. However, Unicom also filed a petition before the Maryland Public Service Commission seeking identical relief, and it is, in effect, seeking to reverse the Maryland PSC's Order No. 66319 of August 10, 1983, pro-

hibiting the resale of FX services. Unicom must seek its relief in Maryland under Maryland law.

With regard to Loudon County, although it will not be allowed to intervene at this late date (see *United States v. AT & T,* 552 F.Supp. 131, 161, 218–19 (D.D.C.1982), the Court will consider the County's position as part of the public interest docket in this case, Misc. No. 82–0025.

ment of Justice and Ameritech have filed responses to the Western Reserve motion.[2]

## I

Metro FX service treats customers in one exchange as though they were served by another exchange by switching subscribers from the first onto the local loop of the second. See *United States v. Western Electric Co.*, 569 F.Supp. 990, 1025 n. 178 (D.D.C.1983). In its Opinions of April 20 and July 8, 1983, this Court considered C & P's unopposed requests for permission to provide inter-LATA Metro FX service in Maryland between selected exchanges in the Baltimore and Washington LATAs. *Id.* at 1025, 1105.[3] The Department of Justice had not opposed C & P's requests, stating that it believed the exceptions to be necessary "to minimize customer disruption and that no significant potentially competitive traffic would be affected" (Response to Comments at 96) and the Court approved all the requests.

The areas which are the subject of the motion presently before the Court were not included within C & P's prior request because, according to C & P, it assumed at that time that interexchange carriers would offer the necessary service. C & P now states that such service by interexchange carriers has become doubtful, particularly in light of the negative responses received by the Maryland Public Service Commission to an inquiry in that regard. Thus, the instant motion which requests permission to expand upon the exemptions originally granted by the Court.[4]

Here, once again, the Court is faced with a borderline situation: there is a conflict between the theoretical requirement to reserve inter-LATA service to the interexchange carriers and the practical need to make arrangements to serve special needs of the public. The Court took such competing values into account in the drawing of the LATA boundaries and the creation of exemptions and modifications with regard to particular areas. In a number of instances, it weighed the desirability of preserving and fostering competition in interexchange markets, on the one hand, against the possibility of significant customer disruption (especially in areas of common social and commercial interests) and of increased switching costs, on the other.[5] The Court has considered similar factors in making its determination whether C & P should be permitted to expand its FX service in the Washington and Baltimore metropolitan areas.

## II

■ Two of the four parties to this dispute take positions which, in the Court's view, do not adequately take account of the various competing needs and interests.

MCI states that the traffic under consideration is inter-LATA, and that it must on

---

**2.** Western Reserve's motion to intervene will also be denied. The Court will consider the merits raised by Western Reserve's motion as part of the public interest docket. See note 1 *supra.*

**3.** The communities between Washington and Baltimore are in an unusual position. The cities of Washington and Baltimore, while geographically close, constitute distinct commercial, economic and social spheres, and for that reason these two cities were placed in two different LATAs. The towns and communities between Washington and Baltimore, however, due to the proximity of those two cities, have social and economic ties to both. Placement in one LATA or the other results in the inability of the residents of these communities to enjoy local calling to a city with which they have substantial common interests.

**4.** The Court notes that it has received innumerable letters, postcards, petitions, and telephone calls from residents and local legislators from the areas under consideration, many of them generated by C & P. As explained in a letter from the Court to the Chairman of Bell Atlantic (the parent of C & P), a judicial body does not make decisions on the basis of petitions, communications from the public, or other forms of pressure. The Court expects that there will be no recurrence of such campaigns at the instigation of a party to this litigation.

**5.** See, *e.g., United States v. Western Electric Co., supra,* 569 F.Supp. at 1001 n. 54, 1017–18, 1019–20, 1021–23; see also the Department of Justice Response to Comments at 5–8.

that basis be reserved to the interexchange carriers. According to MCI, in the event that C & P is allowed at all to carry this traffic by means of its Metro FX service, it should be required to impute to itself access charges, in order thus to give to the interexchange carriers the opportunity to compete on an equal basis. There are two problems with that position.

First. MCI's proposal is based upon the incorrect assumption that Metro FX service is equivalent to the interstate "corridor exemptions" the Court permitted between New York and New Jersey, and Pennsylvania and New Jersey. See *United States v. Western Electric Co., supra,* 569 F.Supp. at 1018–19, 1021–23. In the greater New York City area, there is, of course, considerable commercial intercourse, and the interexchange character of the traffic called for what essentially amounted to an interexchange solution. The present requests, by contrast, concern exemptions for services that are local in nature, and that are designed to resolve only local problems. Moreover, again unlike in the greater New York City area, the imposition of access charges on the order of a usage-based price structure would, in practical terms, eliminate the metropolitan exception.[6]

Second. MCI does not propose to service the area under consideration at this time, nor does it indicate that it will do so in the future even if it should obtain a ruling from the Court favorable to its position. The Court will not deprive the residents of the affected areas of a needed service upon the mere theoretical possibility that some interexchange carrier might, at some time in the future, wish to operate there.

C & P takes an equally unrealistic position. It wishes by means of its Metro FX service to serve the entire area surrounding Baltimore and Washington, including all of the Washington LATA, most of the Baltimore LATA, and significant portions of the Hagerstown and Culpeper LATAs.

Its proposal would thus completely disregard the decree's basic purpose to reserve inter-LATA service to the interexchange carriers. If the C & P request were granted, the local Operating Company would have a significant competitive advantage over any interexchange carrier servicing the Baltimore-Washington route, due to the fact that C & P, unlike its competitors, would not have to pay (or impute to itself) access charges. C & P would then provide discounted inter-LATA service between these cities; it would eliminate all competition on the routes in question; and it would improperly extend its local monopoly on a significant basis. The Court cannot approve an outcome so at odds with the purposes of the decree.

As it has in the past, the Court will allow Operating Companies to engage in what would normally be inter-LATA service only in carefully limited areas and for carefully limited purposes, that is, when this serves the public convenience and does not harm competition. Both AT & T and the Department of Justice approach the C & P petition on the basis of these principles, and both of their recommendations therefore have appeal. After due consideration, the Court has opted in favor of the view espoused by the Department of Justice.

One problem with AT & T's approach is that for some practical purposes its proposal would not be that much different from that submitted by MCI. AT & T apparently intends to pass its carrier access charges on to the subscribers, with the result that customers who have had the benefit of low-cost, flat-rate services would hereafter be offered only a higher-cost, usage-based service. The consequence, of course, would be that the cost of the service would be placed out of the range of many customers. Moreover, significant customer disruption and loss of switching efficiencies may be expected.[7] The unique considera-

---

6. Indeed, by the logic of the MCI proposal, the Metro FX exceptions previously granted by the Court would likewise have to be subjected to self-imposed access charges—a change that would make these "exceptions" not exceptions at all.

7. The Court also notes that, like MCI, AT & T initially represented to the Maryland PSC that it

tions applicable to the region between Washington and Baltimore would not be addressed at all. See note 3 *supra.*

The Department of Justice's proposal is more accurately tailored to preserve the convenience of customers who, by realistic standards, are part of the Baltimore and Washington communities, without at the same time overriding the basic purposes of the decree. The Department has proposed limitations on C & P's request based upon a geographically based "corridor" concept to include for Metro FX purposes those locations between Washington and Baltimore which have a substantial community of interest among themselves and with both cities.[8] Unlike the C & P proposal, however, it would not include the cities of Washington and Baltimore themselves, nor would it include towns and communities at a considerable distance from these cities.[9] Traffic between the two cities clearly represents a competitive market, and if that market were, in effect, reserved to C & P, there would be no principled basis for denying to Operating Companies all over the United States the opportunity to provide inter-LATA service between and among other major cities. Likewise, there is no basis for sanctioning local service between communities which are at a considerable distance from one another and which lack substantial common interests, merely because they all happen to be located in adjoining LATAs.

The Court, accordingly, hereby adopts the Department of Justice approach, with certain exceptions.[10] What this means is that Metro FX and local calling will be available between Washington or Baltimore and the "corridor" communities in either LATA; subscribers not located within the "corridor," will for local calling purposes be restricted to their own LATAs just as are other subscribers everywhere in the United States; and traffic between the cities of Baltimore and Washington will likewise be handled on an interexchange basis.

This approach promotes adherence to the principles of the decree in two ways: it allows a local Operating Company to service the subscribers in a homogeneous community while reserving competitive and po-

did not plan to provide end-to-end FX service on the terms and conditions which currently appear in C & P's tariffs. The Court is reluctant to resolve the problem created in part by the past disinclination of interexchange carriers to service the area in question, by relying on their newly-stated intentions to provide FX services in the future.

**8.** Indeed, these communities have in the past enjoyed FX service to both Washington and Baltimore.

**9.** It is difficult to draw with precision a line between those Maryland exchanges which have a clear community of interest with both Baltimore and Washington and those which do not. The Court will therefore largely rely upon the configuration of the Baltimore-Washington corridor as it was drawn by the Department of Justice. But see note 10 *infra.*

**10.** In drawing up the corridor, the Department excluded Bethesda, Maryland, perhaps in the belief that it is part of the "core community" of Washington, D.C. The Court is unable in this regard to distinguish between that locality and Rockville, Kensington, or Silver Spring, all of which are in identical relationships to Wash-

ington, D.C. Bethesda therefore will be included in the area which C & P may serve.

The Court agrees with the Department that the Buckeystown, New Market, and Mount Airy exchanges in the Hagerstown LATA should have FX service to the Washington but not to the Baltimore LATA, but it does not agree that Frederick should be excluded from obtaining any FX service. Frederick, Buckeystown, New Market, and Mount Airy are identical in that all are communities with substantial ties to Washington, and that all presently have FX service primarily to the Washington LATA. See Application of AT & T and the Bell Operating Companies for Approval of Exchange Areas or LATAs, Exhibit 7, pp. 15–16. Accordingly, C & P may provide FX service to Washington in those four communities.

The Court further approves the recommendation of the Justice Department that Mount Airy also be provided with FX service to the Baltimore LATA. Although this would allow subscribers in that community to obtain local calling in three different LATAs, Mount Airy's unique location in the corner of the Hagerstown LATA and its ties to both the Washington and Baltimore communities justifies such unique treatment.

tentially competitive long distance service to the interexchange carriers.[11]

The precise effects of the Court's ruling on the C & P petition are described in the Appendix hereto.

### III

C & P has also requested permission to provide Loudon County in Virginia with FX service. Loudon County is a part of the Washington standard metropolitan statistical area (SMSA), but because of an apparent misunderstanding between C & P and Loudon County, C & P initially asked that the county be included in the Culpeper LATA, with only limited local service to the Washington LATA.

Loudon County has indicated a preference either to have the Culpeper LATA dismantled and reconfigured into the Washington and Richmond LATAs, or to have the Washington LATA redrawn to include that county. Instead of either of these alternatives, the Court will adopt C & P's proposal to keep Loudon County in the Culpeper LATA, and to provide it with Metro FX service into the Washington. This solution will essentially give to the Loudon County residents the relief they seek, but it is less drastic than the dismantling and reconfiguration of the Culpeper LATA, and less expensive than the placement of Loudon County in the Washington LATA at this late date.[12] This will also preserve the benefits of the original decision to include Loudon County in the Culpeper LATA.[13]

### IV

█ Western Reserve is an independent operating company which is part of the "wide moat of independent telephone territory entirely encircling Cleveland" and separating Cleveland from the Akron-Canton LATA. *United States v. Western Electric Co., supra,* 569 F.Supp. at 1037. Among the exchanges Western Reserve serves are the Hudson and Northfield exchanges.[14] The Hudson exchange is associated with the Akron-Canton LATA, while the Northfield exchange, immediately to the north of Hudson, is associated with the Cleveland LATA.

Western Reserve presently provides Hudson and Northfield residents with FCO service.[15] Ohio Bell participates in the offering of this service by meeting Western Reserve's facilities in Ohio Bell service areas within the Cleveland and Akron-Canton LATAs. On November 3, 1983, Ohio Bell advised Western Reserve that, as of January 1, 1984, it would no longer continue that participation, stating its belief that it is prohibited from doing so by the decree because the service is inter-LATA in nature. Western Reserve's motion request-

---

**11.** It does not follow from the inability of C & P to provide more extensive inter-LATA service that such service cannot be made available by the interexchange carriers on roughly comparable terms. State regulatory commissions retain jurisdiction to determine the level of access charges for intrastate FX connections as well as over interexchange carriers operating within the state. It remains, therefore, within the province of state regulatory authority to determine the rates for intrastate FX service, whether C & P provides the entire service or only the FX connection.

**12.** C & P estimates that it would incur expenses in excess of $1 million in network rearrangement costs if it had to place Loudon in the Washington LATA.

**13.** Many residents of Loudon County have a community of interest with Culpeper. See Application of AT & T and the Bell Operating Companies, Exhibit E, pp. E–7, E–34 to E–35. If Loudon County were to be included in the Washington LATA, there obviously would also be requests, therefore, to provide FX service into the Culpeper LATA. FX service from Loudon County into the Washington LATA is thus a simpler and less expensive solution.

**14.** The two exchanges are located in Summit County, approximately twenty miles southeast of Cleveland, Ohio, and thirteen miles north of Akron, Canton. The exchanges are characterized as suburbs of both Akron and Cleveland.

**15.** FCO subscribers in the Hudson exchange are treated as customers of Western Reserve's Northfield exchange, and they have access to the Cleveland metropolitan exchanges served by Ohio Bell Telephone Company. Similarly, Northfield FCO subscribers are treated as if they were Hudson exchange customers, and they enjoy two-way local calling privileges to Ohio Bell's Akron metropolitan exchanges.

ing relief which would enable it to continue to provide FCO service to Hudson and Northfield customers followed.

The situation of Western Reserve's customers is similar to that of the Maryland subscribers located in the Washington-Baltimore corridor. Hudson and Northfield are located midway between two geographically proximate metropolitan areas, Cleveland and Akron, and they share a substantial community of interest with both. Were Western Reserve and Ohio Bell forced to cease offering FCO service, there would be considerable disruption of customer service. Service which is now being treated as local calling would be converted to toll calling, and additional costs would be imposed on customers who properly consider themselves members of both the Cleveland and Akron communities. In addition, the termination of FCO service would require costly network realignments by both Western Reserve and Ohio Bell.

On the other side of the scale, Western Reserve's request would not affect traffic which has potential for competition, and it would only have a minimal impact in any event. Unlike C & P's proposal with regard to the communities near Washington and Baltimore, the relief Western Reserve requests is narrow and carefully circumscribed.

There is an additional consideration which supports the grant to Western Reserve of the relief it requests. Western Reserve is an independent telephone company, and the Court has always sought to minimize the effects of the divestiture on the Independents. See, *e.g.*, *United States v. Western Electric Co., supra,* 569 F.Supp. 1057 at 1112–13 (D.D.C.1983); *United States v. Western Electric Co., supra,* 569 F.Supp. at 1008–10. Indeed, it may well be that, as the Department of Justice has stated, Western Reserve's FCO service is not subject to the decree's prohibitions on the Bell Operating Companies' provision of interexchange service at all.[16]

For purposes of the present motion, it is not necessary to resolve that issue. The Court has granted relief similar to that requested here to Maryland communities in like circumstances; the relief will be limited; and there is an established policy to minimize the effect of the decree on the Independents. In order to resolve any doubts, the Court holds that Western Reserve may continue to provide FCO service to the Hudson and Northfield exchanges, and that Ohio Bell may continue to meet Western Reserve's dedicated facilities within its territories in the Cleveland and Akron-Canton LATAs.[17]

## APPENDIX

The following exchanges are within the "Baltimore-Washington corridor" and may be provided by C & P with Metro FX service to either the Washington or Baltimore LATA:

Baltimore LATA communities:
Metro FX to Washington

Annapolis
Arbutus
Arminger-Gibson Island
Brooklyn Park-Linthicum

Washington LATA communities:
Metro FX to Baltimore

Ashton
Berwyn
Bethesda
Bowie-Glenn Dale

16. The Department states that the decree does not prohibit Bell Operating Companies from serving from either side a band of Independent territory located between separate Bell Operating Company LATAs. See, *e.g.,* Department of Justice Response to Comments at 50 n. *, 96.

17. Ameritech responds to Western Reserve's motion on behalf of Ohio Bell by proposing that the Court modify its April 20, 1983 order and approve a single LATA for the Cleveland-Akron-Canton area. The problem of the Cleveland-Akron-Canton standard consolidated statistical area (SCSA) was fully briefed by the parties and carefully considered by the Court in its April 20, 1983 Opinion. See *United States v. Western Electric Co., supra,* 569 F.Supp. at 1036–37. The matter raised by Western Reserve in its papers hardly constitutes a development calculated to cause reconsideration of the Court's previous decision. The problem before the Court calls for, and will receive, a simpler remedy than that proposed by Ameritech.

Baltimore LATA communities:
Metro FX to Washington

Catonsville
Columbia
Crofton
Elkridge
Ellicott City
Glen Burnie
Glenwood
Millersville
New Windsor
North Beach
Odenton
Prince Frederick
Randallstown
Severn
Severna Park
Sherwood Forest
Solomons
Sykesville
Waterloo
West River
Woodlawn

Washington LATA communities:
Metro FX to Baltimore

Brandywine
Capitol Heights
Clinton
Damascus
Gaithersburg
Hughesville
Hyattsville
Indian Head
Kensington
LaPlata
Laurel
Layhill
Marlboro
Nanjemoy
Oxon Hill
Poolesville
Rockville
Silver Spring
Waldorf

The following exchanges located in the Hagerstown LATA may be provided .with Metro FX service to the Washington, but not the Baltimore, LATA:

Buckeystown

Frederick

New Market

The following exchange located in the Hagerstown LATA may be provided with Metro FX service to both the Washington and Baltimore LATAs:

Mount Airy